IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVERY S. EURING, | |
| Plaintiff, | Case No. 1:25-CV-03322 |
| v. | Honorable Sunil R. Harjani |
| THE CITY OF CHICAGO et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Avery S. Euring sues the City of Chicago and four police officers, Christina M. Fiorentino, Amanda M. Rios, Peter McGlynn, and an unnamed officer, for detaining and searching him while, as a rideshare driver, he was parked to pick up a passenger. Defendants move to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim because the officers had reasonable suspicion or probable cause for their detention and search of Plaintiff and are also entitled to qualified immunity. Defendants' arguments are based on body-worn camera and in-car camera footage that is not referenced in the Complaint and are not generally considered on a Rule 12(b)(6) motion. Accordingly, and as further explained below, the motion to dismiss [18] is denied.

## Discussion

According to the Complaint, Plaintiff, a rideshare driver, was inside his vehicle waiting to pick up a passenger. [9] ¶¶ 7–8.[1] After the rider entered the vehicle's rear right passenger seat,

---

[1] For purposes of reviewing this motion to dismiss under Rule 12(b)(6), the Court accepts as true, as it must, all factual allegations in the complaint. *Heredia v. Cap. Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

Defendants Fiorentino and Rios allegedly approached the rear end of the vehicle, pulled the passenger out, and placed the passenger in handcuffs. *Id.* ¶¶ 9–10. Plaintiff alleges that he was instructed to exit the vehicle by the unnamed defendant officer and complied. *Id.* ¶¶ 12, 14. Defendant McGlynn then allegedly placed Plaintiff in handcuffs, searched him, and kept him in handcuffs for over eight minutes before releasing him without charge. *Id.* ¶¶ 16, 18, 20, 22.

Plaintiff has brought three federal claims for violations of his Fourth Amendment rights, and an Illinois state claim for false imprisonment. Defendants move to dismiss the Complaint under Rule 12(b)(6), arguing that the officers had reasonable suspicion or probable cause to detain and search Plaintiff and are also entitled to qualified immunity. In support of their motion, Defendants have attached six video exhibits from body-worn cameras (BWC) and an in-car camera, which they claim show that the officers were conducting a traffic stop, were in hot pursuit of Plaintiff's passenger as a suspect of a separate crime, and detained and searched Plaintiff because of his refusal to provide his driver's license and belligerence towards the officers.

On a motion to dismiss, the well-pleaded facts in the complaint are accepted as true, and reasonable inferences are drawn in the plaintiff's favor. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 556 (2007)). "Under the federal rules' notice pleading standard, a complaint must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). A court may examine video exhibits if they are "attached to the complaint" or are "referenced in the pleading [and] central to the claim." *Esco*, 107 F.4th at 678. A video exhibit is central to a claim when review of the video exhibit will aid the court in deciding whether a claim has merit. *See id.* (considering body-worn camera videos that were referenced in the complaint and "dispositive of the issue of probable cause"); *Bogie*, 705

2

F.3d at 608–09 (considering video recordings because "the entire first claim [could] be resolved as a matter of law by observing the scene in the video"). If the video is properly before the Court and "'utterly discredits' the non-movant's version of the facts such that there could be no reasonable disagreement about what the video depicts," then the videos control over the contradictory allegations. *Esco*, 107 F.4th at 679 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

While the Seventh Circuit has recognized the need for a balance between "accept[ing] the plaintiff's well-pleaded facts as true [and] not giving credence to facts that are clearly, definitively, and uncontrovertibly contradicted by video footage," it has only applied this balancing after determining that the video footage can be reviewed on a motion to dismiss. *Id.* at 679. Courts in this district have consistently adhered to the requirement that the complaint attach or incorporate by reference video exhibits in order for the videos to be considered on a motion to dismiss. *See, e.g.*, *Van Dyke v. Cook Cnty. Sheriff's Off.*, 2022 WL 4483835, at *6 (N.D. Ill. Sept. 27, 2022) (reviewing video exhibits that were referenced in the complaint); *Tate v. City of Chicago*, 2020 WL 6715660, at *1 (N.D. Ill. Nov. 16, 2020) (same); *Flores Delgado v. City of Chicago*, 547 F. Supp. 3d 824, 830 (N.D. Ill. 2021) (reviewing video exhibits attached to the complaint); *Robinson v. Crot*, 2024 WL 1603485, at *2 (N.D. Ill. Apr. 12, 2024) (declining to review videos attached to motion to dismiss where the footage was not mentioned in the complaint, even in passing); *Daoud v. City of Chicago*, 2023 WL 5389015, at *3–4 (N.D. Ill. Aug. 22, 2023) (same). That threshold requirement is not met here, where Plaintiff neither attached the videos as exhibits to the Complaint nor referenced the videos in the Complaint.

None of Defendants' cases permit the Court to bypass this requirement. The court in *Hyung Seok Koh v. Graf*, 2013 WL 5348326, at *9 (N.D. Ill. Sept. 24, 2013), noted that the videos

submitted by the defendants were referenced in the complaint before determining that they were central to the claims and could be reviewed. In *Walker v. Gatsios*, 2024 WL 4476118, at *1 (N.D. Ill. Oct. 11, 2024), and *Avitia v. City of Chicago*, 2024 WL 2274101, at *4 (N.D. Ill. May 20, 2024), the district courts stated that they would consider the defendants' submitted videos even though they were not attached to or directly referenced in the complaints because the videos were not objected to by plaintiffs and captured the entirety of the events referenced in the complaints. In contrast, Defendants' six videos are not explicitly referenced by the Complaint, Plaintiff objects to their use, and they do not capture the entirety of the events underlying Plaintiff's allegations.

      The only videos to capture the beginning of the events are the in-car camera footage showing Plaintiff's car in a standing position, and the BWC footage from Defendants Rios and Fiorentino as they get out of a police car and approach the rear of Plaintiff's car. These videos do not depict the officers giving any instructions to Plaintiff regarding a traffic violation and do not have any audio to determine whether a traffic violation was the reason for them appearing on the scene. Nor can the Court determine that there was a traffic violation simply by watching this short clip of the video. Rather, the audio begins once they open the rear door to pull the passenger out of Plaintiff's vehicle, and Plaintiff is only seen and heard sometimes in the background. Defendant McGlynn's BWC footage shows only part of the unnamed officer's instructions to Plaintiff to exit his car. Importantly, none of the videos show Plaintiff being asked for his driver's license before he is searched and handcuffed. Instead, they start with Plaintiff getting out of the car on his own volition, initially pulling away from the unnamed officer saying "don't touch me," but then complying with instructions to put his hands on the car for the pat-down and saying "go ahead." Much of the video is then simply Plaintiff expressing his discontentment very loudly, asking for

4

reasonable articulable suspicion for the stop, and attempting to collect the names and badge numbers of the officers.

The BWC footage from Defendant Zylinska barely shows Plaintiff, and the BWC footage from non-party Officer Schneider does not show him at all. Defendants offer these videos to demonstrate that the officers were in hot pursuit of the passenger as a suspect for a crime, so their actions towards Plaintiff were reasonable due to his potential involvement with the suspected crime. However, portions relevant to Defendants' narrative of events have no audio. This evidence is similar to that in *Kailin v. Village of Gurnee*, 77 F.4th 476 (7th Cir. 2023), in which the Seventh Circuit reversed summary judgment for the defendant officer who shot the plaintiffs' dog. *Id.* at 482. The district court's decision rested on the fact that the dog was threatening the officer, but this fact was only supported by a soundless video that did not show the dog, except maybe one second of a blurry object. *Id.* Without being able to tell whether the dog was barking or growling, the video would not be factually "unambiguous" to a jury. *Id.* In the same way, the videos here about the passenger as a suspect do not "definitively demonstrate[] what occurred." *Id.* Officer Schneider's BWC footage shows him chasing two individuals, but the video is too blurry to identify them before they get away. Defendant Zylinska's BWC footage shows conversations with a parking garage owner who identifies the passenger as a suspect for vehicle theft, but the video does not itself show this connection.

While these videos will undoubtedly provide key insights into the allegedly unreasonable events that form the basis of Plaintiff's claims, the videos alone are not dispositive of the facts at issue or necessary to Plaintiff's ability to have brought his claims.[2] Therefore, following the

---

[2] Defendants claim that Plaintiff had access to the BWC footage before filing the Complaint and therefore relied upon them. However, Defendants' exhibit of an alleged FOIA request made by Plaintiff was not properly filed to allow for review. *See* [25-1]. Regardless, that would not prove that the videos were

5

general rule, the Court will not consider the videos that are not attached to or incorporated into the Complaint and will decide Defendants' motion based on only the well-pleaded facts in the Complaint.

Whether the Complaint states a plausible claim turns on whether the officers had reasonable suspicion or probable cause. "An investigatory stop complies with the Fourth Amendment if the brief detention is based on reasonable suspicion that the detained individual has committed or is about to commit a crime." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015). "This is an objective standard, based upon the facts available to the officers at the moment of the seizure." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). Correspondingly, an officer may only search an individual during a "*Terry* stop" when they have "at a minimum some articulable suspicion that the subject is concealing a weapon or poses a danger to the officer or others." *Gentry v. Sevier*, 597 F.3d 838, 847 (7th Cir. 2010) (cleaned up). Here, Plaintiff alleges that he was inside his vehicle, told the officers arresting his passenger that they needed reasonable articulable suspicion, and complied with an instruction to exit the vehicle. He was then allegedly kept in handcuffs for over eight minutes, before being released without any charges. These allegations, taking them as true, do not indicate that Plaintiff was suspected of, or could be reasonably suspected of, committing a crime, preparing to commit a crime, concealing a weapon, or posing a danger to the officers.

In like manner, whether the officers are entitled to qualified immunity turns on whether they had reasonable suspicion or probable cause. *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th

---

incorporated by reference into the Complaint because all of Plaintiff's allegations could have been made based on his own experience. *See, e.g.*, *Brown v. City of Chicago*, 594 F. Supp.3d 1021, 1030 (N.D. Ill. 2022) (not reviewing videos where the complaint only made passing reference and the plaintiffs "could have brought this § 1983 case if the BWC footage never existed").

Cir. 2022). Once the defense is raised, it is plaintiff's burden to show that qualified immunity is barred because the allegations add up to a claim that a constitutional right was violated and the right was clearly established when the defendants engaged in the alleged conduct. *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020). It is clearly established that an individual has a right against unreasonable searches and seizures under the Fourth Amendment. U.S. Const. amend. IV; *see, e.g.*, *Mwangangi*, 48 F.4th at 827 (affirming summary judgment for plaintiff on Fourth Amendment claim where police officer handcuffed him after he was "friendly, respectful, and fully compliant with [the officer's] instructions after stepping out of the car" and "the frisk did not turn up a weapon or contraband of any kind"). It is also clearly established that, beyond a *Terry* stop, a violation of the right against unreasonable searches and seizures is evaluated by the existence of probable cause. *Neita v. City of Chicago*, 148 F.4th 916, 931 (7th Cir. 2025) (quoting *Dunaway v. New York*, 442 U.S. 200, 214 (1979)); *United States v. Jackson*, 103 F.4th 483, 486 (7th Cir. 2024). "[P]robable cause and arguable probable cause both depend on the elements of the predicate offense." *Neita*, 148 F.4th at 933. However, qualified immunity is not generally a ground for dismissal under Rule 12(b)(6) because determining whether there was a constitutional violation— i.e., no reasonable suspicion or probable cause—"so closely depends on the facts of the case." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (cleaned up).

      As discussed, the Complaint does not indicate that the officers had reasonable suspicion in order to support a grant of qualified immunity. The Court does not determine on these brief allegations whether the events here qualify as a *Terry* stop or remained a *Terry* stop for the entire duration, so the lack of reasonable suspicion in the Complaint's allegations does not end the inquiry. The question remains whether the officers had probable cause. Because probable cause "depend[s] on the elements of the predicate offense," Plaintiff's allegations must be viewed in light

7

of the alleged predicate offense to determine probable cause. *Neita*, 148 F.4th at 933. Defendants first argue that Plaintiff had committed a traffic violation by stopping "[o]n the roadway side of any vehicle stopped or parked at the edge or curb of a street." 625 ILCS 5/11-1303(a)(1)(a). However, details of the road are not known from the Complaint to determine this. Nor is it clear from the allegations that this was the purpose of the officers' encounter with Plaintiff. Defendants then argue that they were in hot pursuit of the passenger in Plaintiff's car, and that Plaintiff acted belligerently. Neither of these assertions are evident from the allegations in the Complaint, and they are dependent on facts that are not yet part of the record. Therefore, the Court cannot say that qualified immunity is appropriate at this stage.

The same analysis follows for Defendants' claimed immunity under the Illinois Tort Immunity Act against Plaintiff's state claim of false imprisonment. The Act protects a public employee from liability for their "act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct," which means "an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/2-202; 745 ILCS 10/1-210. This immunity is an affirmative defense that a plaintiff generally need not overcome. *Doe I v. Bd. of Educ. of City of Chi.*, 364 F. Supp. 849, 862–63 (N.D. Ill. 2019) (citing *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003)). Here, Plaintiff pleads that Defendants each took action against him without legal justification and were "willful, wanton, malicious, oppressive, and done with reckless indifference and/or callous disregard for Plaintiff's rights." [9] ¶ 24. The rest of the allegations do not develop enough of a record to find otherwise, so granting immunity against the state claim would also be premature.

8

Defendants have not requested that the Court convert the motion to dismiss into a motion for summary judgment in order to consider the videos. However, in anticipation of the Court converting the motion on its own, Plaintiff has submitted a declaration under Rule 56(d) seeking further discovery on why Defendants detained him, searched him, and held him as long as they did. While the videos will be useful evidence, they do not provide all the information that Plaintiff seeks. Nor do they "utterly discredit[]" Plaintiff's allegations to justify a ruling for Defendants as a matter of law. *Esco*, 107 F.4th at 679. Therefore, the Court does not find it appropriate to convert the motion to dismiss into a motion for summary judgment on this limited record. *See, e.g.*, *Flores Delgado*, 547 F. Supp. 3d at 830 n.2 (declining to convert motion to dismiss into motion for summary judgment where the plaintiff's brief was "no substitute for a properly-supported Rule 56 record").

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [18] is denied.

**SO ORDERED.**

Dated: November 17, 2025

Sunil R. Harjani
United States District Judge